Good afternoon, Your Honors. Alex Gonzalez on behalf of Brandyn Blatchford. On March 19th of 2004, the victim in this case, who was 13 years old, left school with some of her friends. Counsel, let me interrupt you. We're deadly familiar with the facts. We've got some legal issues on appeal. I agree. First one is sentencing. In your brief on page 19, you say, quote, The district court never once mentioned the advisory nature of the sentencing guidelines. Flat statement. That's contradicted in the red brief, and in the court, it says, I have taken into account the sentencing guidelines, which are advisory. I understand that, and I was mistaken when I put that in the brief, and I rechecked it after I got the government's brief, and they were, in fact, correct. He did say that. But — Did you concede that in a reply brief? I did not. But that didn't necessarily diminish the argument that I was making, but I'd like to get to that later if I could. I wanted to start with the first issue that I raised in the brief, that being whether or not the testimony from a witness that the victim on that occasion was too drunk to have sex was set. Counsel, frankly, the way you presented the issue, it's not the way it happened in court. You tell us it was a 701 case involving a lay opinion, but if you read the transcript, it was completely different. The witness was moving all over the place, and on cross-examination, the witness said one thing, and then on redirect, this whole thing came up. And then at one point, counsel for the defendant said he didn't have any objection to that. It was clearly to impeach the witness. It had nothing to do with the 701. Well, I disagree. The testimony initially was that she was too young, and that was not elicited by defense counsel. That was elicited by counsel for the government. As a hostile witness. Regardless. Over objection, the Court let it in, and that's when he testified that he didn't have sex with her because she was too young. Now, what transpired, you're correct, in that when he was interviewed, that witness, he stated to the FBI one of the reasons that he did not have sex with the victim was because he thought she thought she was too young. So we have the too drunk, too young, and the government now saying this is an impeachment issue, it's not a 701 issue. Isn't that what was said in the trial court? It may have been what was said there. Did your side make any objection that this was an intermissile opinion from a lay witness? To the second one, no. No. To the first one, yes. Just because it's impeachment doesn't mean 701 does not apply. The question is, can this opinion be introduced, and can it be introduced even if it's impeachment, it doesn't matter. I never understood the 701 argument because, gosh, when I was a 16-year-old in high school, I could tell if somebody was extremely drunk. Most people can. It's just pretty ordinary. In fact, there are a bunch of amusing footnotes in Wigmore on evidence about just that, that ordinary folks can tell whether somebody is drunk, real drunk. Well, I agree. Ordinary folks can tell if somebody was drunk. Well, what's the problem with Robert Long? But that's a different issue on whether that person can still consent. A drunk person can consent. Wait a minute. Robert Long. A drunk person can engage in voluntary conduct. I don't understand the fact that just because a person is drunk doesn't mean that person can consent. I seem to recall years ago when I was in college, when I got drunk, got sick, threw up, but still knew what I was doing, if somebody came up to me and said, give me 100 bucks at that time, I would have told them, I don't have 100 bucks, which means I knew what I was doing, I understood the question, and I responded to it. So just because somebody is drunk doesn't mean somebody is incapable of consenting. Many people consent during the course of intoxication. That doesn't mean it's wrong, but it doesn't resolve the issue. Is this a correct statement of what happened? At sidebar, the prosecutor said he was attempting to impeach Robert with Robert's previous statement to Manns that Robert did not have sex with CM because she was too young, not because she was too drunk. Defense counsel then stated he had no objection. Is that what happened? Is that what happened? It is. It's exactly what happened. And that's why that issue, as I argued, had to be analyzed for plain error. But if we go back, we have to keep in mind that that was the second part. The first part, when he first attempted to elicit testimony as to why this witness did not have sex with the victim, it was objected to. And the objection was overruled, and we get the too drunk testimony. Incidentally, does the conviction for sex with a person incapable of appraising the nature of the conduct matter, or would he get the exact same sentence just for sexual act with a person between the ages of 12 and 15? Well, certainly in terms of calculating the guidelines, it doesn't matter because they were grouped together. Does not matter because they're grouped? In terms of the guidelines, but it certainly could matter in the grand scheme of things in terms of factors that a judge could consider in determining sentence. For example, let's assume that this evidence did not come in, this opinion was not allowed, and let's assume that the jury acquitted him of that particular charge. They could still convict him of the second charge, but certainly that would be a factor that the Court can consider imposing a lesser sentence. So what your argument would do then, if you were successful, is he'd get a remand for resentencing on count two, sex with a person between the ages of 12 and 15. Well, if my argument on plain error prevails, I would get a new trial on that count as well. What I'm thinking is, arguably the too drunk answer, it could mean that she's incapable, that Robert thinks she's incapable of appraising the nature of the conduct. It could also mean, I don't like having sex with girls who are real drunk. They may throw up on me. I don't like it. It doesn't necessarily mean that. It would be a jury question what it means. You're absolutely correct. It could mean a number of things, but it certainly can mean what I suggest to this Court it meant, in that she was incapable of consenting due to her state of intoxication. And we don't know the answer to that. We certainly don't know what the jury decides. I'm sorry? Why wouldn't it just be something to explore on cross and leave it to the jury? We can explore anything on cross, but before we explore something on cross, the evidence should be admissible, period. And my position is that it's not. It shouldn't have to be explored on cross. It's too prejudicial. It goes to the ultimate issue. I don't see where it's unring that bell by crossing hands. I don't see where it's all that prejudicial. And I don't see that it's a problem of unringing the bell. I mean, everybody knows these kids are drinking at a party. Well, but they're at various stages of being drunk. I understand that. And let me respond this way. Certainly, there's plenty of evidence in this case that the jury could consider to find that she was incapable of consenting because she was too intoxicated. There's plenty of that. There was, however, evidence in this case, I believe her name was Margaret Milford, who testified that she was awakened in the middle of the night and observed the defendant, Mr. Blatchford, and the victim evidently having sex on the couch. And she heard the victim say, take my pants down. And then when she asks the victim what she is doing, the victim responds with, mind your own business. Thereafter, she goes and awakens Kevin Ballone, whose home they were in, and Kevin comes out and the incident stops. From those facts, a jury clearly could conclude that she knew what she was doing, even in fact she – even if, in fact, she was intoxicated. She asked the man to pull the pants down. She asked the man to continue. I agree with you. And that's why I'm having trouble getting to the notion that it's a 701 problem. It just seems like an ordinary kind of jury issue. That's exactly what 701 says a jury should be able to decide. If there's enough evidence for a jury to consider the issue on its own merits, then we shouldn't be allowing somebody to answer the question for them. That's what this judge in this case allowed the witness to do. And we just can't say, okay, well, I could have gotten it to that situation. Kennedy, I don't remember 701 saying that. Well, 701 clearly says in the second part – If it's helpful to the jury. Excuse me? It's just – if it's helpful to the jury was the criterion, as I understand it. That is correct. If it's clearly – if it's helpful to the jury and if it's necessary for a determination of a fact, that's also part of 701. And in this case, it was not necessary because that's within the province of the jury. There was plenty of evidence. That's the time when these opinions should not come in. What was the evidence that she was 13? The evidence that she was 13 came from the victim herself because prior to the incident, she had never mentioned to anybody, nor did anybody else state that she was under the age of 16, much less 13. In fact, the evidence was that she was telling people she was 19. That's the way the evidence played out all the way through this case until she went to the FBI and indicated she was 13. No other witness in this case testified that they, he or she knew that this person was 13, although certainly there were some there that went to school with her that would have known, but that was not Mr. Blatchford, and there was no evidence that Mr. Blatchford had ever met this person before and therefore knew who she was and what her age was. Was there a birth certificate at all in addition to this case? I don't believe so. It was simply straight testimony from the victim as to her age. I'd like to address one more thing. Over your time. All right. Thank you, counsel. You're welcome. May it please the Court. My name is Joseph Welty. I'm an assistant United States attorney in the District of Arizona. Your Honor, let me address the question regarding the punishment for the two counts. I believe, Your Honor, there is a more substantial punishment for having sex with an individual incapable of appraising the conduct than there is for sexual abuse of a minor. I don't have those comparative numbers, but my recollection is that the punishment is greater. And I don't want the Court to have a misimpression with respect to that. The key issue is the order of what took place in the course of the trial. Both of the questions and answers that the appellant claims are offensive here were both presented on redirect examination. And it's crucial what takes place on cross-examination. Robert Ballone is present that night. He's a percipient witness to the acts that take place before the sexual abuse. And he's a witness at the time of the sexual abuse. And he's the best friend of the defendant at the time as a hostile witness. And that's correct. And that's correct. And what he indicated on questioning by the defense was that the victim herself claimed to be 19 years old. He was then asked by the defense attorney, how old did you think she was? And his answer was 17 or 18 years old. That was on cross-examination. And then he was asked in the context of when he was in the room with the two of them when the sexual assault took place, did you do anything in the room that night to stop what was going on? You're still on cross. On cross. And his response was no. And he was asked, well, why didn't you? And he said, I didn't think anything wrong was going on. That's cross-examination. That's cross-examination. Now, pretrial in the end of the cross, that was the no, that was the cross of Robert Ballone by the defense counsel. That's what I asked. Yes. Yes. On redirect examination, the government asked, well, you had the same opportunities to have to engage in a sexual act with the victim at that time. Why didn't you do it? Objection. Objection relevance, not objection opinion testimony, objection relevance. And the issue at that point for the trial court was to rule on whether it was a relevant question or not. Overruled. And it was. It was overruled, and it was overruled, in fact, because it was irrelevant. We know this. What's your bottom line? The transcripts. The bottom line, I guess, Your Honor, is that it was relevant, it was appropriate rebuttal, because, of course, what Robert Ballone was asked at that point was, why didn't you have sex with her? And his response, which was a surprise to the government, because pretrial he had indicated to the FBI that his response was, because I thought she was too young, which is an exactly appropriate rebuttal to believing that she was 19, 17, or 18. So then you got into the prior statements of the FBI agent. Exactly. And he was rebutted on that. And the defense attorney said, okay, well, I have no objection to that. That's correct, Your Honor. That's correct. There's no reference to 701 or opinion testimony from Blywood. That's correct. And which is why, certainly with respect to age, that there's no question that the age question does not in any way, shape, or form constitute plenary. It doesn't constitute error at all. It's a legitimate rebuttal question. With respect to the question of intoxication, I think Your Honor is exactly correct. The record in this case was that Robert Ballone had already testified that the victim was getting drunk on the top of the hill, that he believed that the victim was intoxicated when people were leaving at the end of the party, that he and the defendant carried the victim down from the hill because of her intoxicated state, that it took two people to carry the victim out of the room after the sexual assault as a result of her intoxicated state. The defendant provided a written statement to the FBI prior to the trial, Exhibit 4, that was presented to the jury. Did she – did Robert Ballone testify that the victim was too drunk to walk before this exchange of questions on redirect? Yes, Your Honor. In the defendant's own written statement, he indicated that the victim was not in her right mind and – I don't care about the written statement. I want to know the testimony at trial. Well, but the written statement was testified to by the FBI agent and was presented before the jury at trial. It was a trial exhibit. It was read to the jury. And my point, Your Honor, is there was overwhelming evidence in this record with respect to the intoxication. So you said he had already testified. What you meant was Robert Ballone had already said in his written statement that she was too drunk to walk, and the jury heard that from the FBI agent. No, no, I'm sorry, Your Honor. I'm mixing two things. Robert Ballone testified at trial that she was too drunk to leave the living room on her own. What I want to know is, did Robert Ballone say she was too drunk to walk in his testimony before the jury before this exchange on redirect? Yes, Your Honor. Because that bears on whether it even mattered that he ventured an opinion on whether she was too drunk during the redirect. He did, in fact, provide that testimony prior to this interview. So you're saying that bell had been ringing for a long time at that time. That's exactly what I'm saying, that to the extent that the question of intoxication constitutes plain error, and again, because there was no objection on the 701 issue. So this can only be evaluated on a plain-error standard. Whether or not it constitutes plain error, I think, has to be looked at on whether or not it constitutes harmless error. And clearly, given the ample evidence in this record with respect to the intoxication and incapacitation of the victim, it does not constitute plain error. With respect, very quickly, to the sentencing issue, as the Court has noted, the judge obviously did acknowledge that the guidelines were advisory and, more importantly, went through at least a six-step process in describing exactly why it was that he was imposing the sentence he imposed. The defendant's argument with respect to issue 2 is simply not supported by the record. Roberts. Thank you, counsel. Thank you. United States v. Blackford is submitted. Well, counsel, you used up all your time, but if you need a few seconds for rebuttal, take 30 seconds or so. Since the focus has been to some extent on whether the victim was able to walk, as I understood the testimony from Robert Ballone, I'm not talking about what was in the government. His testimony was that she was having trouble walking down the hill and that he helped her. So to that extent, she wasn't incapable. She was simply having trouble. That's all I would add. Thank you, counsel. United States v. Blackford is submitted. We'll hear United States v. Silva.
judges: Ferguson, Trott, Kleinfeld